IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINSVILLE DIVISION

| | |
|---|---|
| DR. MARTIN MOREIRA, and ZULEMA MOREIRA<br><br>Plaintiffs,<br><br>v.<br><br>POINTE WEST HOMEOWNER'S ASSOCIATION, and MS. CAROL BRUCE<br><br>Defendants. | Civil Action File No.:<br><br>**JURY TRIAL DEMANDED**<br><br>2:19-cv-00073-RWS-JCF |

**COMPLAINT**

Plaintiffs, Dr. Martin Moreira (Dr. Moreira) and Zulema Moreira (Mrs. Moreira), bring this Complaint against Defendants for equitable relief and damages resulting from intentional race, national origin and/or religious discrimination pursuant to the Fair Housing Act, and 42 U.S.C. §§ 1981, 1982.

**JURISDICTION AND VENUE**

1.

This is a federal question action for damages and equitable relief, based on intentional race, national origin and/or religious discrimination by Defendants. At least two of the parties reside or do business in Georgia and the acts complained of occurred exclusively within Georgia.

2.

Federal jurisdiction is based on 28 U.S.C. § 1343.

3.

Venue in this federal district is proper under 42 U.S.C. § 2000e-5(f) and is otherwise appropriate.

**PARTIES**

4.

Plaintiff, Dr. Martin Moreira, is a resident of the Pointe West neighborhood (Pointe West) in Oakwood, Georgia.  Plaintiff is members of a protected class based on race (Hispanic), national origin (Cuban) and religion (Christian).  His wife, Zulema Moreira, is a member of a protected class based on race (Hispanic), national origin (Argentina) and religion (Christian).

5.

Pointe West is a subdivision operating as a homeowners' association, Pointe West Homeowner's Association, Inc., and may be served through their registered agent Kathleen Eichler at 5650 Harbor Pointe, Oakwood, GA 30566, in Hall County.

6.

Carol Bruce is a homeowner in the Pointe West subdivision and the

chairperson of the Architectural Control Committee of the Pointe West Homeowner's Association.   She may be served at her residence at: 5710 Pointe West Drive, Oakwood, GA 30566.

## STATEMENT OF FACTS

7.

Dr. Moreira and his wife Zulema are retired and own a home in the Pointe West neighborhood in Oakwood, GA.   The subdivision is situated in Hall County.

8.

Dr. Moreira is originally from Cuba and is Christian.   He is a naturalized United States citizen.   Dr. Moreira speaks with an accent and maintains the cultures and traditions of his native country.   His wife, Zulema, is from Argentina and is a naturalized citizen.   She speaks with a strong accent and maintains the cultures and traditions of her native country.

9.

Pointe West is a subdivision operating as a homeowners' association, Pointe West Homeowner's Association, Inc., and subject to a Declaration of Protective and Restrictive Covenants ("Covenants") created in 1995 and amended in 2000.

10.

The Covenants create and empower an Architectural Control Committee (ACC) to act on behalf of the Pointe West Homeowner's Association.  The ACC promulgates and enforces rules, regulations and guidelines for construction in the subdivision.  The Covenants also set forth specific rules and aesthetic standards for property features such as retaining walls, playgrounds, pools and lawn structures.

11.

In March 2017, Plaintiffs sought approval of a backyard project for their home in Pointe West, including a play area for his family and grandchildren that would not be visible from the street.  Dr. Moreira believes in traditional family values and the project was designed to encourage special times of communion and fellowship with his family and more specifically with his grandchildren.

12.

Pursuant to the Covenants, some elements of the project required approval from the ACC, and some from local governmental agencies, including the Hall County Building Department.

13.

In January of 2017, Dr. Moreira first had initial discussions with Carol

Bruce in the front yard of his house on the side of the garage where the project was intended to be built. Carol Bruce at that time stated that approval for the intended project would take two weeks from the time that the project was submitted.

14.

In March 2017, the initial application was submitted in person by Dr. Moreira to Mr. Brian Pawlik a member of the HOA. The application was a detailed submission which included all required drawings with detailed specifications of the equipment to be installed.

15.

Mrs. Carol Bruce made her personal feelings known as early as March 7, 2017 that she did not support approval of Dr. Moreira's project, despite its seeming compliance with all ACC prerequisites.   In response, Mr. Bob Robocinski told Mrs. Bruce, "I don't feel that we (ACC) can reject what he wants to do on his property."   The next day on March 9, 2017, Mr. Robocinski and Mrs. Bruce again traded emails where Mrs. Bruce is told again by Mr. Robocinski that "there's very little that can be done with what he wants to do with his side yard" other than ask for compliance with the HOA guidelines.

16.

On March 11, 2019, the ACC notified Dr. Moreira that the project did not have approval and listed nine items to be submitted for the ACC to continue its review.

17.

After the initial application was not approved by the ACC, Dr. Moreira made several inquiries into the reasons the ACC had for not approving his plan.

18.

On March 17, 2017, in an effort to satisfy the outstanding requests, Dr. Moreira submitted a second application with additional information on the claimed deficiencies.   Again, the ACC did not approve the application and now demanded fourteen items of information, claiming these items were necessary to properly review the projects compliance with HOA covenants and guidelines.

19.

On information and belief, the ACC deviated from practice and procedure when reviewing and making a decision about these applications.   Dr. Moreira's applications were treated differently than other homeowners in Pointe West with different processes and requirements for approval.

20.

In deviation from established practice, ACC members went to the Hall County Building Department and demanded all information regarding Dr. Moreira´s application. Hall County Building Department staff later confided with Dr. Moreira´s architect Mr. Jack Bailey that ACC members were looking for something to kill the project. Mr. Jack Bailey, himself the President of his own homeowner's association, indicated that he had never seen similar conduct in his experience as an architect and with his own homeowner's association.

21.

Similarly situated backyard projects of other homeowners (of different race and national origin) were treated differently and approved because of intentional discrimination based on different race and national origin.

22.

For example, the ACC required an engineer stamp on site plans submitted by Dr. Moreira and refused to review the application without the stamp.   Dr. Moreira objected stating that no such stamp requirement exists in the covenants or rules.

23.

As another example, Dr. Moreira has identified seven properties inside the

Pointe West subdivision where retaining walls had been built in the same relative location with respect to the property lines that were approved while Dr. Moreira's similar project was not approved.

24.

Dr. Moreira has also identified three other properties in the subdivision where similar play structures were actually visible from the street and not landscaped as the ACC required of Dr. Moreira.

25.

Dr. Moreira´s play ground project will not be visible from the street.   His immediate neighbors on either side have agreed that the project can be built in the intended location.   Both neighbors are in favor of the project design. The neighbor impacted by the proposed retaining wall on the property line has also expressed his approval.

26.

Dr. Moreira sought out the members of the ACC, Ms. Carol Bruce, Mr. Bob Robocinski, Mr. Brian Pawlik for an explanation of the altered processes and delay in obtaining ACC approval for the project when similarly situated projects had been approved using different procedures than were applied to him.

27.

On March 16, 2017, Dr. Moreira attended an in-person meeting with Mr. Robocinski and the president of the Pointe West Homeowner's Association, Mr. Mason Karimzedah.   At that meeting, Mr. Robocinski, became loud and demonstrated a demeaning and hostile attitude towards Dr. Moreira because of his race, national origin and/or religion.

28.

The tone of the meeting became so toxic that Dr. Moreira asked to be excused and left the meeting due to this discriminatory treatment.   The next day Mrs. Bruce, who was not even at the meeting, called Dr. Moreira "presumptuous, narcissistic and deeming [sic]."

29.

Dr. Moreira ultimately attended five meetings regarding his project where he supplied drawings showing the retaining wall on the property line.   No objections were raised in those meetings to the location of the retaining wall on the property line.   Hall County Building Department approved the project with the retaining wall on the property line, and his adjoining neighbors also consented.   Dr. Moreira spent thousands of dollars for additional drawings and layouts premised on the location of the retaining wall.

30.

On June 6, 2017, Dr. Moreira again submitted a modified application for the Family Leisure Area Project (FLAP). The plan called for a retaining wall to be built on the property line, and a playground and cooking area similar to other projects approved by the ACC for others of different race, national origin and faith.

31.

On June 28, 2017, the ACC again denied the application claiming that the retaining wall's location (on the property line) prevented compliance with existing rules (despite other similarly situated projects approved by the ACC) and that the location of the swing set and gazebo required compliance with the existing neighborhood aesthetics (a malleable standard used by the ACC to cloak there discriminatory intent).

32.

Defendants are aware that Dr. Moreira´s expenditures for the project items exceed one hundred thousand dollars. The equipment is now in storage and is precluding access to the garage.

33.

The HOA has aggressively opposed Dr. Moreira's plans for improvements

to his Pointe West home. They have strictly applied and misapplied the architectural guidelines and HOA rules to prevent Plaintiffs from completing their project, while approving similarly situated projects.

### COUNT I – RACE, NATIONAL ORIGIN AND RELIGIOUS DISCRIMINATION: FAIR HOUSING ACT

34.

Plaintiffs incorporate herein the preceding and foregoing paragraphs as if stated herein for this claim for relief.

35.

The Fair Housing Act (FHA) is "a comprehensive open housing law." *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413 (1968). The purpose of the statute, as expressed by Congress, is "to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. Thus, it is intended to promote "open, integrated residential housing patterns and to prevent the increase of segregation, in ghettos, of racial groups whose lack of opportunities the Act was designed to combat." *Otero v. New York City Housing Auth.*, 484 F.2d 1122, 1134 (2d Cir.1973). In order to achieve its purpose, the provisions of the FHA are to be construed broadly. *See Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 211–12 (1972).

36.

Under 42 U.S.C. § 3604(a), it is unlawful: "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). Dr. Moreira was intentionally discriminated against based on race, national origin or religion.

37.

Under 42 U.S.C. § 3604(b), it is unlawful: "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b).

38.

Under 42 U.S.C. § 3617, it is unlawful: "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected under this section.

39.

Unlawful discriminatory intent may be proved directly with evidence that a discriminatory reason motivated the defendants, or indirectly with evidence of a prima facie case and evidence the proffered explanation for the action taken is unworthy of credence.  *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

40.

Intentional discrimination may be proved by: (1) direct evidence of racial/religious or national origin discrimination or (2) discriminatory adverse treatment when compared to similarly situated non-minority person plus other circumstantial evidence of discriminatory intent.

41.

Plaintiffs are members of a protected class based on race, religion and national origin.

42.

Plaintiffs were subjected to discriminatory conduct, based on discriminatory intent based on race, religion and national origin as illustrated, *inter alia*, by (1) Different and changing procedures were applied to his project; (2) Similarly situated projects of persons of different race and national origin were treated dissimilarly and approved; (3) The application was pre-judged by

members of ACC and subject to changing requirements; (4) Plaintiffs were disrespected and treated with hostility in meetings and in the overall ACC process.

43.

These actions and their discriminatory intent were a motivating factor in the interference with the facilities, enjoyment and use of his home, property and the Pointe West facilities, and precluded future development of Plaintiffs' home and property.

44.

ACC violated Plaintiffs' rights under the Fair Housing Act.

## COUNT II - DISCRIMINATION IN CONTRACTUAL RELATIONS IN VIOLATION OF 42 U.S.C. § 1981

45.

Plaintiffs incorporate herein the preceding and foregoing paragraphs as if stated herein for this claim for relief.

46.

Under 42 U.S.C. § 1981, Plaintiffs have the right "to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens…. and to make and enforce contracts including] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual

relationship. This right is secured against governmental or non-governmental discrimination.

47.

Under 42 U.S.C. § 1982, Plaintiffs have "the same right … as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." This right is secured against governmental or non-governmental discrimination.

48.

Plaintiffs are members of a protected class based on race and national origin, and were treated differently than white citizens in contracts and his real property by Defendants.

49.

Plaintiffs were subjected to discriminatory conduct, based on discriminatory intent and treated differently than white citizens as illustrated, *inter alia*, by (1) Different and changing procedures were applied to their project; (2) Similarly situated projects of persons of different race and national origin were treated dissimilarly and approved; (3) The application was pre-judged by members of ACC and subject to changing requirements; (4) They were disrespected and treated with hostility in meetings and in the overall ACC process.

50.

These actions and their discriminatory intent were a motivating factor in the interference with the facilities, enjoyment and use of his home, property and precluded future development of Plaintiffs' home and property.

51.

Pointe West, through the ACC, violated Plaintiffs' rights under 42 U.S.C. §§ 1981 and 1982.

**WHEREFORE**, Plaintiffs pray for judgment as follows:

1. Injunctive relief ensuring equal treatment in the approval process by ACC without future discriminations based on race/national origin and religion;

2. Compensatory damages in an amount to be determined by the conscience of the jury and evidence presented;

3. Punitive damages in an amount to be determined by the conscience of the jury and evidence presented;

4. Trial by jury on all issues so triable;

5. Reasonable expenses and attorneys' fees incurred in bringing this action; and,

6. Such other relief as the Court deems just and proper.

Dated: This the 10th day of April, 2019.

Respectfully submitted,

/s Gerald Weber
Gerald Weber
(Georgia Bar No. 744878)

P.O. Box 5391
Atlanta, Georgia 31107-0391
wgerryweber@gmail.com
(404) 522-0507

*/s/ Craig Goodmark*
Craig Goodmark
Georgia Bar No. 301428

Goodmark Law Firm
One West Court Square
Decatur, Georgia 30030
(404) 719-4848
cgoodmark@gmail.com

Attorneys for Plaintiff